UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
JOSEPH ANTHONY RAIA on behalf of himself
and his son A.R., a minor,

               Petitioner/Plaintiff,

    -against-

MICHAEL POMPEO, in his official capacity as
Secretary of State; and U.S. DEPARTMENT OF
STATE,

               Respondents/Defendants.
-------------------------------------------------------------X

For Online Publication Only

**ORDER**
20-cv-1083 (JMA) (AYS)

FILED
CLERK
4/21/2020 1:30 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**JOAN M. AZRACK, United States District Judge:**

Joseph Anthony Raia ("Plaintiff" or "Petitioner") commenced this action on February 27, 2020, by filing a Complaint and Petition for Mandamus, together with a Proposed Order to Show Cause. The Court issued an Order to Show Cause on February 28, 2020, ordering defendants Michael Pompeo, in his official capacity as Secretary of State, and the U.S. Department of State ("Defendants" or "Respondents") to show cause "why a mandatory preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure ('Fed. R. Civ. P.') should not be issued compelling Respondents and those acting under them to perform their duties and issue a U.S. passport to Petitioner Joseph Anthony Raia for A.R. without further delay." (ECF No. 12.)

On March 13, 2020, the undersigned held a show cause hearing and denied Plaintiff's application for a mandatory preliminary injunction to compel the U.S. Department of State (the "State Department") to issue Plaintiff a passport for his minor son, A.R. (ECF No. 26.) The following Order recites the facts of this case and further explains the Court's March 13 oral ruling.

## I. BACKGROUND

While Plaintiff attempts to frame this case as a simple demand for a passport, there are many intersecting issues for the Court to unpack, beginning in January 2019. Plaintiff alleges that

his estranged wife (who is an Italian citizen) took A.R. to Italy without his knowledge on January 4, 2019. (Declaration of Joseph Anthony Raia ("Raia Decl.") ¶ 2, ECF No. 24-1.) Plaintiff commenced an application under the Hague Convention on the Civil Aspects of International Child Abduction (the "Hague Convention") on January 29, 2019, seeking the return of A.R. to the United States.[1] (Raia Decl. Ex. A, ECF No. 24-2.) However, Plaintiff's application was not finalized for transmission to the Italian Central Authority until December 27, 2019. (Raia Decl. Ex. B, ECF No. 24-2.) At the show cause hearing, Plaintiff's attorney could not explain the reason for this significant delay, referencing only the need to obtain some official documents, such as marriage certificates, that are typically readily accessible. (PI Hearing Tr. 3:14–4:11, Mar. 13, 2020.) Although the application was transmitted to the Italian Central Authority in December 2019, as of the date of the show cause hearing, an Italian court proceeding seeking A.R.'s return under the Hague Convention had not yet been implemented. (See id. 33:14–34:7; Raia Decl. ¶ 4.)

Before the application was finalized for transmission, on October 15, 2019, Plaintiff completed a State Department form entitled "Statement Regarding a Lost or Stolen U.S. Passport Book and/or Card" and represented on the form that A.R.'s passport book was "lost," writing in the explanation section "my house." (Declaration of Layaliza Soloveichik ("Soloveichik Decl.") Ex. B, ECF No. 21-2.) Although Plaintiff was certainly aware that A.R.'s passport was with A.R and his mother, by submitting this form indicating that A.R.'s passport was "lost," Plaintiff caused A.R.'s passport, which was valid through July 2020, to be electronically cancelled so that it could

---

[1] Proceedings under the Hague Convention "arise when a parent allegedly 'abducts' a child by taking him or her to a country other than that of his or her 'habitual residence.'" Erin Gallagher, A House Is Not (Necessarily) A Home: A Discussion of the Common Law Approach to Habitual Residence, 47 N.Y.U. J. Int'l L. & Pol. 463, 463–64 (2015). The proceedings seeking return of the child take place in the country to which the child was brought, and the child must be returned to his habitual residence unless an exception applies. See id. at 465–67.

not be used for travel.[2] (Id.) In response to this application, the State Department sent Plaintiff a letter that his application for A.R.'s passport could not be completed until he provided: (1) photographs of A.R. that complied with the outlined State Department requirements; (2) A.R. in person; and (3) signatures of both parents, or a court order authorizing Plaintiff to apply solo. (Raia Decl. Ex. D, ECF No. 24-5.)

Prior to cancelling A.R.'s passport, Plaintiff had petitioned for sole custody of A.R. in New York State Supreme Court. (Raia Decl. ¶ 5.) On December 6, 2019, Justice Helen Voutsinas of Nassau County Supreme Court heard testimony from Plaintiff and Mark A. Green, Esq., an attorney who was appointed to represent A.R.[3] (NYS Hearing Tr., Dec. 6, 2019, ECF No. 6-3.) At the end of the hearing, Justice Voutsinas ruled that:

> Mr. Raia shall have final residential and physical custody of [A.R.] pending the appearance of the child in New York. It is also order[ed] that Mr. Raia shall retrieve the child from Italy and return him to the proper jurisdiction of this court. It is further ordered that Mr. Raia shall be issued a passport for the child even though the child is not present here in the United States without the mother's consent.

(Id. 18:18–19:8.) Plaintiff provided this order to the passport office, but did not receive a passport for A.R. Plaintiff asserts that he received a response in early January 2020 denying A.R.'s passport application because A.R. was not physically present, but Plaintiff does not have a copy of any denial letter. (Raia Decl. ¶ 10.) Defendants assert that Plaintiff was telephonically advised on December 11 and 12, 2019 that A.R.'s personal appearance was still required and would not be

---

[2] There can be no mistake that Plaintiff knew A.R.'s U.S. passport was not "lost." In other materials Plaintiff sent to the State Department in April 2019 related to his Hague Convention application, he wrote, "I returned home from work to discover my wife and our child and all of his clothing GONE as well as both of their passports GONE." (Raia Decl. Ex. C, ECF No. 24-4.) Plaintiff continued, "I later discovered & learned our child was taken to Italy with his mother"—thus, Plaintiff was clearly aware that A.R. was taken out of the country, necessitating the use of his passport. (Id.)

[3] Mr. Green had no contact with A.R. prior to the hearing. (Decl. in Supp. ¶¶ 3, 7, ECF No. 6-1.) In addition, A.R.'s mother was not present for the hearing. Plaintiff informed the State Court that she was served via WhatsApp, which Justice Voutsinas accepted as proper service. (NYS Hearing Tr. 2:17–5:6, Dec. 6, 2019, ECF No. 6-3.)

waived despite A.R.'s medical condition (discussed further, infra). Plaintiff was also offered the contact information for the U.S Consulate in Milan where he could bring A.R. to satisfy the in-person requirement. (Declaration of Bennett Fellows ("Fellows Decl.") ¶ 13, ECF No. 20.) After Plaintiff initiated the instant action, the State Department sent Plaintiff a letter dated March 5, 2020 informing him that the deficiencies regarding A.R.'s personal appearance and photographs remain. (Raia Decl. Ex. E, ECF No. 24-6.)

Plaintiff seeks to compel Defendants to issue him a passport for A.R. notwithstanding the deficiencies in his application. He contends that the outstanding requirements identified by the State Department must be waived due to A.R.'s health condition and status as an abducted child. According to Plaintiff, A.R. has a congenital heart condition that requires constant, uninterrupted care. (Petition for Mandamus and Complaint for Declaratory Relief ("Complaint") ¶ 3, ECF No. 1.) A.R. underwent heart surgery at seventeen days old and Plaintiff provided a letter from A.R.'s physician indicating that A.R. will inevitably need heart surgery "in the near future" and that it is imperative for A.R. to keep scheduled appointments. (Compl. Ex. B, ECF No. 1-2.) Plaintiff also repeatedly cites the worsening COVID-19 situation in Italy as an emergency reason that A.R. must be returned to the United States as soon as possible because he claims any exposure could be fatal given A.R.'s underlying heart condition.[4]

By way of further background, Defendants informed the Court that a Milan civil court granted custody to A.R.'s mother on July 24, 2019. (Soloveichik Decl. Ex. C, ECF No. 21-3.) Plaintiff claims that he contested the jurisdiction of the Italian Court. (Raia Decl. ¶¶ 24–26, Ex. G., ECF Nos. 24-1, 24-7.) Furthermore, in response to Plaintiff's application under the Hague

---

[4] The Court notes that the circumstances surrounding the COVID-19 pandemic in Italy and here in the United States are rapidly changing. At the time Plaintiff commenced this action, no confirmed cases had yet been reported in the tri-state area and Milan, Italy (where Plaintiff believed A.R. to be located), was the center of the European outbreak. Now, New York State has more confirmed COVID-19 cases than any country outside of the United States.

4

Convention, the State Department informed Plaintiff that the Italian Central Authority had located A.R., but that A.R.'s mother reported she took A.R. to Italy due to Plaintiff's abusive behavior. (Raia Decl. Ex. F, ECF No. 24-6.)  Plaintiff's response to the State Department, dated March 12, 2020, denied the allegations of abuse and continued to argue that A.R. should be returned to the United States pursuant to the Hague Convention.  (Raia Decl. Ex. G., ECF No. 24-7.)

The Court questioned both parties extensively at the show cause hearing.  Plaintiff's counsel represented that Plaintiff brought this action in tandem with the petition for A.R.'s return under the Hague Convention with the hope that once his Hague Convention petition is granted, he would have the passport in hand to immediately bring A.R. to the United States. (PI Hearing Tr. 3:12–14, 5:8–13, 9:14–10:5.)  Counsel further confirmed that Plaintiff does not intend to travel to Italy to retrieve A.R. before he has a legal right to do so (i.e. until an Italian Court grants his petition for A.R.'s return pursuant to the Hague Convention) and he simply wants to obtain the passport now to prevent any potential delay in obtaining a passport should the Hague Convention petition be granted.  (Id. 5:8–13, 9:14–10:5, 16:17–22.)  Nonetheless, without any assurances that his Hague Convention petition would be granted, or other identified means to access A.R., Plaintiff moved for a mandatory preliminary injunction to compel Defendants to issue Plaintiff a passport for A.R. immediately.

## II.  DISCUSSION

"A party seeking a preliminary injunction must show (1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc., 883 F.3d 32, 37 (2d Cir. 2018) (internal citation omitted).  However, "[b]ecause mandatory injunctions disrupt the

status quo, a party seeking one must meet a heightened legal standard by showing a clear or substantial likelihood of success on the merits." Id. (internal quotation marks and citation omitted). Based on the record before the Court, Plaintiff cannot demonstrate that he is entitled to a mandatory preliminary injunction.

### A. Irreparable Harm

"A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." Faiveley Transp. Malmo AB v. Wabtec Corp., 559 F.3d 110, 118 (2d Cir. 2009) (internal quotation marks and citation omitted). To satisfy this requirement, Plaintiff "must demonstrate that absent a preliminary injunction [he] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." Id. (internal quotation marks and citation omitted).

Here, Plaintiff cannot demonstrate irreparable harm. The primary harm Plaintiff identifies is that his son's congenital heart condition makes him more susceptible to complications arising from the COVID-19 virus, so he needs to be removed from Italy, which, at the time of Plaintiff's application, was the epicenter of the European outbreak of the COVID-19 pandemic.[5] The harm Plaintiff identifies, an increased risk to A.R.'s health and life, is certainly irreparable. However, Plaintiff has not shown that that the relief he seeks—the issuance of a U.S. passport for A.R. to Plaintiff—would remedy that harm.

---

[5] Plaintiff makes a related argument, that if the lockdown in Italy caused by the COVID-19 outbreak prevents A.R. from accessing his medication, he would likely die. Plaintiff, however, provided no evidence that A.R.'s medication supply has been threatened by the Italian restrictions, so this argument is meritless. Furthermore, Plaintiff's other argument, that even absent the COVID-19 pandemic, A.R. must be returned to the United States because his doctors are in New York, is based on the speculative assumption that his New York doctors are superior to Italian doctors. There is some evidence that A.R.'s mother changed A.R.'s medication, resulting in A.R.'s renal failure, but Plaintiff acknowledges that A.R. was subsequently placed back on the prior medication. Plaintiff has not identified any cogent non-COVID-19 related threats to A.R.'s health based solely on the medical care he can receive in Italy.

6

To avoid the alleged irreparable harm, Plaintiff needs control over his son's person in order to bring him back to the United States (and away from the dangers he claims are present in Italy).[6] However, Plaintiff—whose various filings indicate that he cannot be exactly sure where his son is[7]—confirmed that he did not have access to A.R.'s person as of March 13, 2020. This lack of access, which Plaintiff contends frustrates his ability to comply with the State Department's passport requirements, is not something this Court, or Defendants, can remedy. Critically, Plaintiff confirmed that he does not seek to engage in "self-help" to track down his son in Italy in order to bring him back to the United States. Plaintiff instead plans to wait until an Italian court grants his petition for A.R.'s return under the Hague Convention and gives Plaintiff the legal right to bring A.R. back to the United States. There is thus no urgency in Plaintiff's passport application because it will not, in any discernable fashion, reduce the potential risk to A.R.'s health.

Plaintiff, however, insists that he needs a passport for A.R. immediately because he is certain to prevail in the Hague Convention proceeding in Italy and the moment it is granted, "he wants the passport in hand, so that there is no further delay" in returning A.R. to the United States.[8] (PI Hearing Tr. 9:20–23.) This argument is flawed in multiple respects.

First, Plaintiff has not shown that a ruling on his petition under the Hague Convention is imminent. Moreover, it is far from certain that Plaintiff will prevail in the Hague Convention

---

[6] Plaintiff failed to show irreparable harm as of March 13, 2020, and this Order explains the Court's decision as of that date. However, the Court notes that Plaintiff's irreparable harm argument has only grown weaker as the number of confirmed COVID-19 cases in New York State has increased past the number in Italy. Today, based on the exponential growth of COVID-19 cases in the New York area, Plaintiff's argument that A.R. is safer from COVID-19 in New York appears far less plausible than at the time of the hearing.

[7] For example, in Plaintiff's reply papers he reported that A.R.'s mother called him on March 11, 2020 and said she and A.R. were at a bed and breakfast in Zurich. (Raia Decl. ¶ 17.) However, at the show cause hearing, Plaintiff's attorney indicated that A.R. was still in Milan. (PI Hearing Tr. 11:14–20.) Moreover, Plaintiff has consistently claimed that A.R.'s mother has a history of lying about A.R.'s location so he cannot be sure of his whereabouts.

[8] Plaintiff argues that Defendants have not conditioned Plaintiff's passport application on success in the Hague Convention proceeding. (PI Hearing Tr. 13:16–22, 17:2–4.) However, Plaintiff himself confirmed that he only plans to remove A.R. from Italy after succeeding in the Hague Convention proceeding, so the Court must address Plaintiff's application in the context of that condition.

7

proceeding. Plaintiff maintains that A.R. must be returned to the United States because Plaintiff believes the United States is A.R.'s "habitual residence," an undefined term used in the Hague Convention. (Reply Mem. at 3, ECF No. 24; see also Letter dated 3/6/2020, ECF No. 16; Letter dated 3/10/2020, ECF No. 18.) This Court is not the proper venue to decide the merits of Plaintiff's Hague Convention petition, but it is not a foregone conclusion that he would be successful. An Italian Court must first determine A.R.'s "habitual residence" and whether he was wrongfully removed to Italy.[9] Furthermore, even if the Italian Court determined that A.R.'s habitual residence was the United States, there are exceptions under the Hague Convention to mandating a child's return to his habitual residence.[10] Thus, the remedy of issuing Plaintiff a passport for A.R. is too attenuated from the alleged irreparable harm because it relies on too many unknowns. See Shain v. Ellison, 356 F.3d 211, 216 (2d Cir. 2004) (finding "an accumulation of inferences is simply too speculative and conjectural to supply a predicate for prospective injunctive relief").

Furthermore, if Plaintiff prevails in the Hague Convention case (or otherwise obtains access to A.R.'s person), Plaintiff would then be able to bring A.R. to a U.S. Consulate to satisfy

---

[9] Under the Hague Convention, if a child is wrongfully removed, the child is to be returned to the State of his "habitual residence," unless an exception applies. See Hague Convention on the Civil Aspects of International Child Abduction, Arts. 3, 4, 12, 13, 20, Oct. 25, 1980, T.I.A.S. No. 11670, 1343 U.N.T.S 89. As noted above, the term "habitual residence" is not defined in the Hague Convention. Gallagher, supra note 1 at 468. While Plaintiff points to a recent Supreme Court decision addressing habitual residence, that case is only binding on U.S. courts tasked with determining if a child who was brought to the United States must be returned to another country pursuant to a Hague Convention proceeding. See Monasky v. Taglieri, 140 S. Ct. 719 (2020).

[10] The Hague Convention provides for five exceptions to returning a child to his habitual residence:

> "First, if the left-behind parent does not commence proceedings for return of the child within one year from the date of the wrongful removal or retention, a court is not required to order the return of the child if he or she is now settled in the new environment. Second, if the left-behind parent either consented to or subsequently acquiesced to the removal or retention, a court does not have to order the return of the child. Third, a court is not bound to order the return of the child if there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation. Fourth, if the court finds that the child is mature enough and objects to being returned, it can take into account his or her views and refuse to order return. Finally, the requested State may refuse to return the child if it would not be permitted by its principles relating to the protection of human rights and fundamental freedoms.

Gallagher, supra note 1 at 466–67 (internal citations and quotation marks omitted). The Court offers no assessment about whether any of the exceptions might apply here.

the in-person and photo requirements to obtain the passport for A.R.[11]  Even considering A.R.'s condition, Plaintiff has not shown that the requirement that he first bring A.R. to a U.S. Consulate prior to going to the airport would endanger A.R.'s health and constitute an irreparable harm.

Finally, at the show cause hearing, Plaintiff's counsel stated that although Plaintiff's hope is to be able to go to Italy and accompany A.R. back to the United States, A.R. might travel back to the United States alone.  (PI Hearing Tr. 12:9–25.)  This assertion is utterly speculative, and it is extremely unlikely that after prevailing in a contentious Hague Convention proceeding, Plaintiff, who is a doctor, would not make all efforts to travel to Italy himself to bring A.R.—a 10-year-old child with a congenital heart condition—back to the United States.  And, even if Plaintiff was unable to travel to Italy, the March 5, 2020 letter from the State Department explains that 22 C.F.R. § 51.28(a)(4) permits Plaintiff to, "by notarized written statement or affidavit, authorize an adult to appear with [A.R] in loco parentis to execute [the] application." (Fellows Decl. Ex. C, ECF No. 20-3.)  Since someone undoubtedly would need to bring a 10-year-old child to the airport and put him on the plane, the Court sees no reason how, even in this scenario, requiring Plaintiff to designate a proxy to first bring A.R. to a U.S. Consulate to complete the passport application could constitute an irreparable harm.[12]  Again, Plaintiff has not shown that requiring A.R. to spend time at a U.S. Consulate to complete the passport application rises to the level of an irreparable harm.

---

[11]  While the United States banned travel from Europe effective midnight on March 13, 2020, Defendants' attorney confirmed at the show cause hearing that the ban did not apply to U.S. citizens, so Plaintiff was not, at that time, prohibited from traveling to Italy to retrieve A.R.  (PI Hearing Tr. 32:21–25.)  Plaintiff has not claimed that the possibility of future travel restrictions could prevent him from traveling to Italy to retrieve A.R.  In any event, any potential future travel restrictions are far too speculative to constitute irreparable harm because, inter alia, a favorable decision on Plaintiff's Hague Convention petition is not imminent or a foregone conclusion and the nature of the COVID-19 pandemic changes daily.  And, even if Plaintiff could not travel to Italy, as discussed further infra, Plaintiff could designate a proxy to bring A.R. to the U.S. Consulate to complete the passport application.

[12]  The Court also notes that if Plaintiff was in possession of A.R.'s passport, but unable to travel to Italy to retrieve A.R., Plaintiff would still have to arrange for A.R. to receive the passport in Italy.  Plaintiff never explains how he would accomplish this transfer or how this process would be more expedient than the other avenues for obtaining a passport already available to Plaintiff.

Accordingly, while the harm Plaintiff alleges (the risk to A.R.'s health and life) is irreparable, the record does not demonstrate that this harm would likely be remedied by the relief requested. Moreover, Plaintiff has not demonstrated that the available avenues for obtaining a passport for A.R. already available to him are likely to materially delay A.R.'s return in such a manner that would endanger A.R.'s health. Thus, Plaintiff has not met the irreparable harm element necessary to obtain a preliminary injunction.

### B. Clear or Substantial Likelihood of Success on The Merits

While the lack of irreparable harm itself prevents the Court from issuing a preliminary injunction, Plaintiff also cannot meet the heightened standard for a mandatory injunction. Indeed, the Court believes Plaintiff has no chance of success on the merits because he cannot show entitlement to mandamus relief under 28 U.S.C. § 1361.[13]

A writ of mandamus is an "extraordinary remedy" that "will issue only to compel the performance of a clear nondiscretionary duty." Pittston Coal Grp. v. Sebben, 488 U.S. 105, 121, (1988) (internal citations and quotation marks omitted). The prerequisites for the issuance of a writ of mandamus are "(1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and peremptory duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available." Anderson v. Bowen, 881 F.2d 1, 5 (2d Cir. 1989) (internal citations and quotation marks omitted).

Plaintiff asserts he has a "clear right" to obtain a U.S. passport for his son. However, Plaintiff has not met all the requirements to obtain a passport for A.R. because he has not provided

---

[13] Plaintiff's second Cause of Action seeks a declaratory judgment that Defendants' refusal to issue a U.S. passport for A.R. to Plaintiff violates federal regulations and is arbitrary and capricious. (Compl. ¶¶ 66–72.) Plaintiff's motion for a preliminary injunction only sought "a mandatory preliminary injunction compelling []Defendants to issue a U.S. passport for A.R. and to provide the passport to Dr. Raia." (Pl.'s Mem. at 8.) Plaintiff's opening papers make no mention of his claim for a declaratory judgment, so the Court does not consider it in the context of the instant motion. Plaintiff's limited mention of the declaratory judgment in his reply papers, in response to points raised by Defendants, does not otherwise place it before the Court.

A.R. in person or a photograph that complies with State Department requirements, including that it was taken within the past six months. Plaintiff's contention that it is "impossible" for him to satisfy these requirements does not require the State Department to waive them, nor does the New York State Supreme Court Order otherwise satisfy these requirements. Furthermore, while the regulations contemplate certain situations where the in-person requirement for minors could be waived, nothing in the regulations contemplates the waiver of the photograph requirement. See 22 C.F.R. §§ 51.28(a)(1), 51.26. Therefore, even assuming arguendo that Plaintiff might be entitled to a waiver of the in-person requirement, Plaintiff's failure to satisfy the photograph requirement alone shows that he has not established a substantial likelihood of success on the merits.

For the same reason, Plaintiff has not established that Defendants have a plainly defined and peremptory duty to issue him a passport for A.R. In his reply papers, Plaintiff asserts "[i]f all of the criteria are met, the Department of State must issue a U.S. passport for a U.S. Citizen Applicant." (Reply Mem. at 11 (citing Alsaidi v. United States Dep't of State, 292 F. Supp. 3d 320, 327 (D.D.C. 2018).) Once again, all of the passport criteria are not met here. Furthermore, the case law cited by both parties indicates that the issuance of a passport is discretionary, not mandatory, and importantly, that mandamus relief may not be employed "to direct the exercise of judgment of discretion in a particular way." Zaidan v. Tillerson, No. 17-CV-3604, 2018 WL 3769966, at *2 (E.D.N.Y. Aug. 9, 2018) (internal citations and quotation marks omitted); see also Alsaidi, 292 F. Supp. 3d at 327 ("[I]t is not obligatory to issue [a passport] to every citizen who desires it."); Retuya v. Chertoff, 2009 WL 10697296, at * 4 (M.D. Fla. Sept. 28, 2009) aff'd. on other grounds, 412 F. App'x 185 (11th Cir. 2010) ("[P]assport issuance is a discretionary function exclusively reserved to the Executive Branch."). Thus, the only potentially proper mandamus

relief would be to direct the State Department to issue a decision on Plaintiff's passport application for A.R., which has been left open to allow Plaintiff to comply with the deficiencies identified in the March 5, 2020 letter. (See Raia Decl. Ex. E.) Plaintiff, however, has not sought this specific relief—rather, he claims the only possible decision is to issue a passport for A.R. to Plaintiff.

Finally, Plaintiff cannot establish the lack of an alternative remedy, because, as outlined above, if and when Plaintiff obtains access to A.R.'s person, Plaintiff (or an assigned proxy) can bring A.R. to a U.S. Consulate to complete A.R.'s passport application. Thus, Plaintiff has not demonstrated any likelihood of success on the merits, much less "a clear or substantial likelihood of success on the merits."

### C. **Public Interest**

Finally, there are multiple reasons why granting this injunction is not in the public interest. First, the State Department asserts that the photograph and in-person application requirements are in place to combat fraud and international abduction. (Fellows Decl. ¶¶ 3–4.) Requiring the State Department to waive these requirements, when Plaintiff does not even have access to A.R.'s person to return him to the United States, would not serve the public interest.

Moreover, as discussed above, Plaintiff provided false information in his initial application for a passport for A.R. when he represented on the form that A.R.'s passport book was "lost," writing in the explanation section "my house." This action caused Plaintiff's valid passport to be rendered unusable for travel. That Plaintiff created the situation where A.R. does not have a valid passport, together with the significant inconsistencies in Plaintiff's various applications and submissions to this Court and the State Department, also weighs against granting the injunction.

In addition, Plaintiff indicates that he plans to wait for the Hague Convention proceeding to conclude before returning A.R. to the United States, which underscores that there is no public

12

interest in granting Plaintiff the passport for A.R. immediately. Furthermore, if the Court did direct Defendants to issue Plaintiff the passport for A.R., it would effectively interfere with the Hague Convention proceeding in Italy, something that is certainly not in the public interest.

Plaintiff argues that "any legitimate U.S. government interest is vastly outweighed by the substantial risk of A.R. dying abroad if he is not returned to his treating physicians." (Reply Mem. at 15.) However, as discussed at length above, granting Plaintiff the passport will not mitigate the risk to A.R.'s health because Plaintiff first needs access to A.R.'s person, and once he obtains that access, he has not identified any reason why he cannot bring A.R. to a U.S. Consulate to complete the application. Accordingly, the preliminary injunction is not in the public interest.

### III.  CONCLUSION

The Court is sympathetic to A.R.'s plight, and the concerns raised by Plaintiff for his son's health, particularly considering the challenges presented by the COVID-19 pandemic. However, Plaintiff has simply not established that he is entitled to a mandatory preliminary injunction to compel the State Department to issue Plaintiff a passport for A.R. Accordingly, Plaintiff's application for a mandatory preliminary injunction is DENIED.

**SO ORDERED.**

Dated: April 21, 2020
      Central Islip, New York

      /s/ (JMA)
      Joan M. Azrack
      United States District Judge